UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-912-CHL

JULIUS A. EDELEN,                                                        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,                          Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is the Complaint (DN 1) of Plaintiff Julius A. Edelen ("Edelen").  In his Complaint, Edelen seeks judicial review of the final decision of the Commissioner of Social Security (the "Commissioner").  Edelen filed a Fact and Law Summary.  (DN 15.)  The Commissioner also filed a Fact and Law Summary.  (DN 20.)  The Parties have consented to the jurisdiction of a Magistrate Judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed.  (DN 13.)  Therefore, this matter is ripe for review.

For the reasons set forth below, the final decision of the Commissioner is **AFFIRMED**.

## I.      BACKGROUND

Edelen protectively filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") on October 15, 2014, alleging disability beginning February 13, 2014.  (R. at 126.)  On October 20, 2015, Administrative Law Judge ("ALJ") William C. Zuber conducted a hearing on Edelen's applications.  (*Id.* at 84-122, 126.)  In a decision dated March 9, 2016, ALJ Zuber engaged in the five-step evaluation process promulgated by the Commissioner to determine whether an individual is disabled.  (*Id.* at 123-46.)  In doing so, ALJ Zuber made the following relevant findings:

1

2.      The claimant has not engaged in substantial gainful activity since February 13, 2014, the alleged onset date.  (*Id.* at 128.)

3.      The claimant has the following severe impairments: depression; obsessive-compulsive disorder; post-traumatic stress disorder; and migraine headaches.  (*Id.*)

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (*Id.* at 130.)

5.      [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567 and 416.967(c) except no more than occasional climbing of ramps and stairs; no more than occasional balancing; no climbing of ladders, ropes, or scaffolds; is precluded from concentrated exposure to vibration, dust, fumes, gases, or odors; no exposure to dangerous machinery or unprotected heights; no exposure to noise level above DOT noise level 4 or above.  The claimant is capable of performing simple, unskilled, routine tasks, not fast-paced or quota driven; no more than occasional contact with co-workers and supervisors; no contact with the general public.  Changes in work routine or environment would be rare and gradually introduced.  The claimant can sustain concentration, persistence, and pace for periods of two hours at a time.  (*Id.* at 132.)

6.      The claimant is unable to perform any past relevant work.  (*Id.* at 138.)

. . .

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  (*Id.*)

11.     The claimant has not been under a disability, as defined in the Social Security Act, from February 13, 2014, through the date of this decision.  (*Id.* at 139.)

After this denial, Edelen then protectively filed the instant applications for DIB and SSI on April 22, 2016.  (*Id.* at 300-15.)  On July 18, 2018, ALJ Jerry Lovitt conducted a hearing on Edelen's applications.  (*Id.* at 42-83.)  In a decision dated October 17, 2018, ALJ Lovitt engaged in the five-step evaluation process promulgated by the Commissioner to determine whether an individual is disabled.  (*Id.* at 7-30.)  In doing so, ALJ Lovitt made these findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2017.  (*Id.* at 12.)

2. The claimant has not engaged in substantial gainful activity since March 10, 2016, the alleged onset date.  (*Id.*)

3. The claimant has the following severe impairments: migraines, syncope, bipolar disorder, post-traumatic stress disorder (PTSD), depression, and obsessive-compulsive disorder.  (*Id.*)

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (*Id.* at 14.)

5. [T]he claimant has the residual functional capacity to perform medium work as defined in the Dictionary of Occupational Titles (DOT), except with: occasional climbing of ramps/stairs and occasional balancing; frequent stooping, kneeling, and crouching; no crawling, no climbing of ladders, ropes, or scaffolds, no unprotected heights, and no exposure to workplace hazards such as dangerous machinery with moving parts that fail to stop when human contact is lost; occasional exposure to extreme temperatures, wetness, humidity, vibration, and pulmonary irritants such as dust, fumes, gasses[,] and poor ventilation; no more than moderate levels of noise as defined in Appendix D of the Selected Characteristics of Occupations (SCO); able to understand, remember, and carry out simple, routine instructions; able to sustain concentration completing simple, repetitive, routine tasks; can use judgment in making simple work-related decisions consistent with this type of work; requires an occupation with an established routine and set procedures with few changes during the workday; no fast-paced, production line, or quota-driven work; no assembly-line work and no tandem tasks; occasional contact with supervisors and co-workers and no contact with the general public; and with being off task no more than 10% of the workday in addition to normally scheduled breaks; and with missing no more than one day of work per month.  (*Id.* at 15-16.)

6. The claimant is unable to perform any past relevant work.  (*Id.* at 21.)

7. The claimant was born on November 17, 1968, and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  (*Id.* at 22.)

8. The claimant has at least a high school education and is able to communicate in English.  (*Id.*)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a

finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.  (*Id.*)

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  (*Id.*)

11.     The claimant has not been under a disability, as defined in the Social Security Act, from March 10, 2016, through the date of this decision.  (*Id.* at 23.)

Edelen requested an appeal to the Appeals Council, which denied his request for review on October 18, 2019.  (*Id.* at 1-6, 298-99.)  At that point, ALJ Lovitt's decision became the final decision of the Commissioner.  *See* 20 C.F.R. § 422.210(a) (2020); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision).  Pursuant to 20 C.F.R. § 422.210(c), Edelen is presumed to have received that decision five days later.  20 C.F.R. § 422.210(c).  Accordingly, Edelen timely filed this action on December 13, 2019.  (DN 1.)

## II.     DISCUSSION

The Social Security Act authorizes payments of DIB  and SSI to persons with disabilities. *See* 42 U.S.C. § 401-434, 1381-1383f.  An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a) (2020).

### A.     Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards.  42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  "Substantial evidence" means "more than a mere scintilla"; it means

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion."  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way").  However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record.  *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

### B. Five-Step Sequential Evaluation Process

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim.  20 C.F.R. §§ 404.1520, 416.920 (2020).  In summary, the evaluation process proceeds as follows:

(1)  Is the claimant involved in substantial gainful activity?  If the answer is "yes," the claimant is not disabled.  If the answer is "no," proceed to the next step.

(2)  Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[1] and significantly limits his or her physical or mental ability to do basic work activities?  If the answer is "no," the claimant is not disabled.  If the answer is "yes," proceed to the next step.

(3)  Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1?  If the answer is "yes," the claimant is disabled.  If the answer is "no," proceed to the next step.

---

[1] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve (12) months.  20 C.F.R. §§ 404.1509, 416.909 (2020).

5

(4)     Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work?  If the answer is "yes," then the claimant is not disabled.  If the answer is "no," proceed to the next step.

(5)     Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work?  If the answer is "yes," the claimant is not disabled.  If the answer is "no," the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The claimant bears the burden of proof with respect to steps one through four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing.  *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).  The claimant always retains the burden of proving lack of RFC.  *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

### C.     Edelen's Contentions

Edelen contests ALJ Lovitt's Finding Nos. 3, 5, 9, 10, and 11.  (DN 15.)  He argues that ALJ Lovitt erred in not finding certain of his impairments severe, in determining his RFC, and in using a hypothetical question with the vocational examiner ("VE") that did not adequately reflect his limitations.  (*Id.*)  The undersigned will address Edelen's arguments below.

### 1.     Determination of Severe Impairments

Edelen claims that ALJ Lovitt erred at step two of the five-step sequential evaluation process when he did not find either evidence to support additional severe impairments or that the impairments assessed as severe and non-severe at the time of ALJ Zuber's prior decision have worsened.  (DN 15, at PageID # 2976.)  As stated above, ALJ Lovitt found Edelen suffered from the following severe impairments: migraines, syncope, bipolar disorder, PTSD, depression, and obsessive-compulsive disorder.  (R. at 12.)  ALJ Lovitt then noted that other than Edelen's new

diagnosis of bipolar disorder, there was no evidence to support additional severe impairments beyond those in ALJ Zuber's previous decision. (*Id.* at 13.) He specifically noted that the evidence as to a number of other impairments including Edelen's history of traumatic brain injury, abnormal liver function, chronic kidney disease, monoclonal gammopathy, acid reflux, obesity, and back pain did not support the worsening of those conditions such as to make them severe impairments. (*Id.* at 13-14.)

Despite stating an objection to ALJ Lovitt's Finding No. 3, Edelen fails to clearly state which impairment(s) should be considered severe that ALJ Lovitt did not classify as severe. (DN 15, at PageID # 2976.) While his argument under the heading "Finding No. 3" incorporates his thirteen-and-a-half-page argument regarding Finding No. 5, no subheadings or other discussion within that argument provide further clarity on which impairment(s) Edelen means. (*Id.* at 2977-90.) The only additional, nonsevere impairment discussed at some length in that section of Edelen's brief is anxiety, which ALJ Lovitt did not explicitly discuss in his step-two analysis. (*Id.*) Other than anxiety, because Edelen fails to specifically and coherently state which impairment(s) ALJ Lovitt failed to either classify as severe or to find that new and material evidence or changed circumstances justified a different finding than that of ALJ Zuber, the Court finds the same waived. *See United States v. Layne*, 192 F.3d 556, 566-67 (6th Cir. 1999) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (finding that issues adverted to in a "perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"); *Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006).

As to ALJ Lovitt's failure to find Edelen's anxiety to be a severe impairment, the failure to do so is not reversible error given that ALJ Lovitt did find Edelen to have other severe impairments and moved on to address the remaining steps prescribed by the regulations. *Maziarz*

*v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). "Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error." *Hobbs v. Comm'r of Soc. Sec.*, No. 1:14-CV-121, 2015 WL 4247160, at *5 (W.D. Mich. July 13, 2015) (citing *Maziarz*, 837 F.2d at 244). *See also Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009). This is because the determination that an impairment is non-severe does not prevent an ALJ from considering it in his or her assessment of a claimant's RFC. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) (2020) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity."). "The fact that some of [a claimant]'s impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008). As will be discussed more fully below, ALJ Lovitt did assess Edelen's anxiety in his determination of Edelen's overall RFC. For that reason and because ALJ Lovitt found severe impairments and moved on with the disability evaluation process in full, Edelen's challenge to Finding No. 3 is without merit.

### 2.    RFC

Edelen next argues that the record as a whole does not support ALJ Lovitt's RFC finding. A claimant's RFC is "the most [a claimant] can still do despite [the claimant's] limitations . . . based on all relevant evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC finding is based on a consideration of medical source statements and all other evidence, medical and non-medical, in the record. *Id.* Thus, in making the RFC finding, the ALJ must assign weight to the medical source statements in the record and consider the

descriptions and observations of the claimant's limitations as a result of any impairments from the claimant and the claimant's family and friends.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  Here, Edelen claims that ALJ Lovitt incorrectly found himself to be bound by the prior decision of ALJ Zuber, improperly assessed the evidence of record concerning Edelen's headaches and mental impairments, erred in discounting Edelen's own description of his symptoms and limitations, and improperly assigned weight to the opinion evidence in the record.  (DN 15, at PageID # 2977-90.) The Court will assess each of these arguments in turn before considering whether ALJ Lovitt's RFC determination as a whole is supported by substantial evidence.

a)      *Drummond/Earley*

Because Edelen has applied previously for DIB and SSI and ALJ Zuber issued a written decision, ALJ Lovitt considered in his decision whether he was bound by ALJ Zuber's prior findings according to the standards set by the Sixth Circuit in *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997).  *Drummond* stands for the proposition that principles of *res judicata* are binding on both claimants and the Commissioner and that where "the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances."  *Id.* at 842.  In recognition of this ruling, the SSA issued AR 98-4(6) directing those within the Sixth Circuit to follow that holding.  SSAR 98-4(6), 63 Fed. Reg. 29,771 (June 1, 1998).  AR 98-4(6) explains,

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the [Social Security] Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding . . . .

*Id.* at 29,773.  The Sixth Circuit recently clarified that when considering a subsequent disability claim for a new period of disability, an ALJ is permitted to review prior ALJ findings but is not

bound by them. *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 933-34 (6th Cir. 2018). In considering a successive application that covers a new period of disability, a subsequent ALJ should take a "fresh look" at the new record to determine if a claimant's condition has worsened or new evidence changes previous analysis. *Id.* at 931. However, the Sixth Circuit cautioned that a successive applicant who offers "no new evidence after a failed application . . . should not have high expectations about success." *Id.* at 933. It noted, " What's past likely will be precedent in that setting—as indeed it should be in a system designed to apply the law consistently to similarly situated individuals." *Id.* at 933-34.

Here, ALJ Lovitt correctly identified the barrier Edelen had to overcome in order for a new determination to be made in his second application, stating an ALJ "may not make a different finding with respect to an unadjudicated period unless new and material evidence or changed circumstances provide a basis for a different finding." (R. at 13.) In his analysis of Edelen's RFC, ALJ Lovitt also repeatedly considered whether new evidence justified a different result than that of ALJ Zuber's decision. (*Id.* at 60-65.) Edelen argues that ALJ Lovitt improperly applied *Drummond* with respect to his migraine headaches. (DN 15, at PageID # 2977-78.) ALJ Lovitt noted that there were no new MRIs or other objective testing and no related ER or urgent care visits and that Edelen continued to manage his symptoms with medication and botox injections. (R. at 19.) ALJ Lovitt stated that he "added some specific limitations from the time of the prior ALJ decision, but otherwise largely agrees with the assessment at that time and sees no new and material evidence to support a worsening." (*Id.*) Edelen questions why new limitations were added if there was no new and material evidence to support a worsening, but it is unclear how that argument demonstrates reversible error here. If ALJ Lovitt had not added new limitations, he would have used the same RFC determination made by ALJ Zuber, who already found claimant

not disabled.  Therefore, to the extent Edelen argued that ALJ Lovitt's assessment of his migraine headaches was improper under *Drummond*, the Court finds any error to be harmless.

Further, the Court notes that this case seems to fall squarely with the Sixth Circuit's recent decision in *Earley* because Edelen instant applications pertained to benefits from a new period. ALJ Zuber's decision considered whether Edelen had been under a disability from February 13, 2014, through ALJ Zuber's March 9, 2016, decision.  (*Id.* at 123-46.)  ALJ Lovitt's decision addressed whether Edelen was under a disability from March 10, 2016, through ALJ Lovitt's October 17, 2018, decision.  (*Id.* at 7-30.)  These are two different periods.  Indeed, during the hearing before ALJ Lovitt, Edelen's counsel even requested to amend the March 10, 2016, onset date to April 22, 2016, the date of Edelen's application, to help clarify that that Edelen's "mental health ha[d] deteriorated from the previous hearing" as evidenced by a number of medical records near in time to that date.  (*Id.* at 65-66.)  Under these circumstances, ALJ Lovitt's decision evidences that he thoroughly reviewed all new evidence from the new period and compared it to both the prior evidence and RFC finding from ALJ Zuber's opinion before adding new limitations. Therefore, ALJ Lovitt properly conducted the "fresh look" required by *Earley* and applied the principle of *res judicata* in this case.

### b)      Migraine Headaches

Edelen also points to the frequency and duration of the migraine headaches he suffers as evidence that ALJ Lovitt's RFC finding cannot be supported by the record.  (DN 15, at PageID # 2977.)  He argued that the evidence cited by ALJ Lovitt was insufficient to support his ability to sustain medium work on a continuous basis given that ALJ Lovitt's RFC determination only allowed for one missed day per month.  (*Id.*)  ALJ Lovitt cited to Edelen's own testimony regarding his migraines, including his testimony that he gets botox injections for his headaches that have

reduced them in frequency from every day to three times per week and that they last for two hours to two days at a time.  (R. at 17.)   ALJ Zuber had previously found that in spite of Edelen's migraines, he could still perform a range of medium work with certain postural, hazard, noise, and mental limitations.  (*Id.*)  ALJ Lovitt found that "there remains no evidence to support a significant worsening from the time of the prior ALJ decision, and [Edelen]'s allegations thus remain only partially consistent with the record."  (*Id.* at 19.)  ALJ Lovitt noted that there were no new MRIs or other objective testing and no emergency room "or urgent care visits to help corroborate poorly controlled, intractable, or unstable symptoms."  (*Id.*)  ALJ Lovitt also emphasized that Edelen continued to manage his symptoms with medication and botox injections and that "the frequency of episodes alleged for disability has not been entirely consistent with reports noted for treatment." (*Id.*)  Edelen argued that ALJ Lovitt should have credited his own testimony regarding the frequency of his migraines, which would support a need to miss more than one day of work per month.  (DN 15, at PageID # 2977.)  However, Edelen cited to no specific medical records other than his own testimony to support his alleged limitations or to contradict ALJ Lovitt's assertion that "the frequency of episodes alleged for disability has not been entirely consistent with reports noted from treatment."  (R. at 19.)  Edelen pointed to no treatment provider or other source to support his assertion that he would need to miss work more than one day per month as included in ALJ Lovitt's RFC determination.  In view of the evidence cited to by ALJ Lovitt, there was substantial evidence to support ALJ Lovitt's assessment of Edelen's migraines.

### c)      **Mental Impairments**

Next, Edelen challenges ALJ Lovitt's RFC finding regarding Edelen's mental impairments, specifically his anxiety, depression, and bipolar disorder.  (DN 15, at PageID # 2978-85.)  Edelen claims that ALJ Lovitt did not adequately consider his mental limitations as evidenced

by the medical record.  ALJ Lovitt recounted Edelen's testimony that "he remains unable to work due to severe anxiety," his panic attacks, racing thoughts, difficulty with concentration, and difficulty controlling his anger.  (R. at 17.)  ALJ Lovitt concluded any "new evidence for the most part supports stable symptoms consistent with the moderate limitations allowed for [in the RFC finding], and the claimant's allegations in this regard thus remain only partially consistent with the record."  (*Id.* at 18.)  ALJ Lovitt noted that Edelen was admitted to the Brook Hospital for a nervous breakdown in May of 2016, where he was diagnosed with bipolar disorder.  (*Id.*)  ALJ Lovitt emphasized that Edelen's other treatment records did not support such severe symptoms, Edelen returned to outpatient psychiatric treatment after his hospitalization, and Edelen exhibited "relatively stable symptoms" and "few treatment changes."  (*Id.*)  He found that Edelen's medical records did not support complaints of medication side effects and extreme anxiety and instead supported "largely normal findings, including normal grooming/hygiene, normal speech, and normal eye contact."  (*Id.*)  ALJ Lovitt also noted that while Edelen's records supported difficulty with concentration and quick recall memory, Edelen's interactions with treatment providers and other mental status findings—including consistent demonstrations of logical, goal-directed, and organized thought processes; orientation to self, place, time, and situation; and fair insight and judgment—supported the social limitations imposed in the RFC.  He also noted that while GAD-7 and PHQ-9 testing results fluctuated, overall, they supported the level of limitation he assessed.  (*Id.*)  In support, ALJ Lovitt cited to Edelen's mental health treatment records.  (*Id.* at 1546, 1605, 1881, 1942, 1972, 2029, 2615-16, 2670-94, 2706, 2719.)

Edelen claims the same medical records cited by ALJ Lovitt do not support a stabilization of symptoms or largely normal findings and spends several pages of his brief pointing to findings in other portions of the medical records cited by ALJ Lovitt that he believes support his assertions

regarding his mental impairments. (DN 15, at PageID # 2980-84.) The records cited by ALJ Lovitt cover numerous visits by Edelen with his treating psychiatrist Dr. Amanda B. Hettinger and therapist Thomas Jayan, LCSW, between October 26, 2016, and April 25, 2018. A review of those records supports ALJ Lovitt's characterization that exam findings were largely normal and his symptoms were stable. (R. at 1453-54, 1483-84, 1505-06, 1522, 1525-26, 1545, 1573, 1576, 1603, 1605, 1879, 1881-82, 1909, 1911, 1941-42, 1972, 2001, 2003, 2041, 2615-16, 2676, 2678-79, 2692, 2702-03, 2706, 2716, 2718-19.) Though Edelen's mood was anxious in several late 2016 examinations, by the beginning of 2018, his mood was "upbeat," "nice," and "fair." (*Id.* at 1453, 1483, 1502, 1505, 1522, 1525, 1546, 1573, 1576, 1603, 1605, 1879, 1881, 1909, 1911, 1941, 1972, 2001, 2003, 2041, 2615, 2703, 2706, 2716, 2719, 2676, 2679, 2692.) In May 2017, he shifted from regular counseling appointments with Jayan to appointments on an "as needed" basis because of his stability. (*Id.* at 2716 ("[M]utually agreed to go as needed basis for counseling due to stability."); *Id.* at 1939.) Despite Edelen's testimony regarding medication side effects, he only initially reported that his Seroquel made him groggy. Then, during a December 2016 appointment with Dr. Hettinger, he said that though Seroquel made him groggy it had lessened over time and he currently found it manageable. (*Id.* at 1603.) He then continued to generally report that he was taking his medication as prescribed and deny any side effects through his last appointment of record in March 2018. (*Id.* at 1500, 1573, 1603, 1879, 1909, 1939, 1970, 2001, 2039, 2613, 2675.) While he continued to report some anxiety even as of his March 2018 appointment, no changes to his treatment were prescribed. (*Id.* at 2613.) Based on these records, the undersigned concludes that ALJ's Lovitt's assessment was supported by substantial evidence. ALJ Lovitt did not conclude that Edelen's anxiety and depression had wholly resolved and instead limited Edelen in light of these mental impairments to reduce stress. (*Id.* at 21.) In light of this evidence, Edelen's

arguments amount to nothing more than an attempt to show that substantial evidence would have also supported a different conclusion than the one reached by ALJ Lovitt.  However, the Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart*, 710 F.3d at 374.

### d)      Pain and Other Symptoms

Edelen also argues that ALJ Lovitt did not properly consider his complaints of side effects from medication and pain from headaches.  A claimant's statement that he or she is experiencing pain or other symptoms will not, taken alone, establish that he or she is disabled; there must be medical signs and laboratory findings that show the existence of a medical impairment that could reasonably be expected to give rise to the pain and/or other symptoms alleged.  20 C.F.R. §§ 404.1529(a), 416.929(a) (2016).  If the ALJ finds that there is a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms, the ALJ must then assess the intensity and persistence of a claimant's symptoms to determine how those symptoms limit the claimant's capacity for work.  20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).  In doing so, the ALJ should consider a number of factors including a claimant's daily activities, effectiveness of any medication taken to relieve symptoms, and any side effects of that medication.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)) ("Relevant factors for the ALJ to consider in his evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing

on the limitations of the claimant to perform basic functions."). ALJ Lovitt included a list of the relevant factors for his consideration in his decision. (R. at 16-17.)

Here, ALJ Lovitt concluded that while Edelen's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Edelen's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 18.) In coming to this conclusion, ALJ Lovitt considered in great detail both the objective evidence regarding Edelen's migraine headaches and his response to Botox treatments, as well as subjective evidence on the record, including Edelen's daily activities like repeatedly referencing babysitting, spending time with friends and family, and trips to the gym. (*Id.*) These activities and the frequency with which the record supported Edelen performing them are inconsistent with the level of disabling symptoms Edelen asserted. As to the consistency of Edelen's complaints with the record, the Court has already concluded above that ALJ Lovitt's assessment of Edelen's migraines was supported by substantial evidence. Accordingly, it was proper for ALJ Lovitt to discount Edelen's testimony regarding his migraines given that inconsistency. Further, as to Edelen's argument that ALJ Lovitt failed to consider the side effects of his medications, as noted above, the record does not support Edelen's testimony regarding those side effects and any interference with his abilities given that he repeatedly denied experiencing any side effects. (*Id.* at 1500, 1573, 1603, 1879, 1909, 1939, 1970, 2001, 2039, 2613, 2675.) Given these conclusions, the Court holds that ALJ Lovitt did not err in his assessment of Edelen's pain and testimony regarding his symptoms and limitations.

### e)   Opinion Evidence

Edelen also argues that ALJ Lovitt failed give the proper weight to medical opinions in the record. In making a determination of a claimant's RFC, the ALJ is required to consider the record

as a whole, including the claimant's testimony and opinions from the claimant's medical sources. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a)(1). The source of a medical opinion dictates the process by which the ALJ gives it weight.[2] *Gayheart*, 710 F.3d at 376. Generally, the ALJ is required to give more weight to a source who has examined the claimant than one who has not and more weight to a source who regularly treats that claimant than one who does not. *Id.* at 375. Specifically, Edelen contests the weight ALJ Lovitt gave to the opinions of the state reviewing medical sources, consultative psychologist G. Stephen Perry, Ed. D. ("CE Perry"), and his treating neurologist Dr. Plato. (DN 15, at PageID # 2978, 2988-90.)

Starting with the state agency sources, Edelen claims ALJ Lovitt improperly relied on them because the state agency did not review any medical records past November 2016 and failed to cite to specific medical records in support of their opinions. (*Id.* at 2978.) Pursuant to the applicable regulations, ALJs "'must consider' the medical findings of State Agency medical and psychological consultants because they 'are highly qualified' physicians and psychologists as well as 'experts in Social Security disability evaluation'" *Pickerell v. Saul*, No. 3:18-cv-281-HBB, 2019 WL 4280589, at *3 (W.D. Ky. Sept. 10, 2019) (citing 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2)). Even where the state agency medical consultants opinions are based on only a portion of the record, reliance on those sources is still proper when an ALJ also considers the evidence that post-dates the state agency's review. *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009).

Here, ALJ Lovitt assigned significant weight to the opinions of the state agency physicians, who adopted ALJ Zuber's RFC because they found no new and material evidence justifying a

---

[2] The new regulations for evaluating opinion evidence do not apply to Edelen's claim because his application was filed before March 27, 2017. *Compare* 20 C.F.R. 404.1527(c)(2) (2020) ("For claims filed before March 27, 2017, the rules in this section apply."), *with* 20 C.F.R. § 404.1520c (2020) ("For claims filed on or after March 27, 2017, the rules in this section apply.").

different result. (R. at 17-18.) ALJ Lovitt indicated that those opinions "were well-cited and generally consistent with the overall longitudinal record as a whole, as well as familiar with the "agency's rules and regulations particularly with regard to the *Dennard/Drummond* rules." (*Id.* at 18.) Edelen's argument that it is unclear to what records ALJ Lovitt is referring is unfounded as the Court could easily navigate to the records ALJ Lovitt deemed consistent with the state agency physician's opinions based upon the provided cites in the remainder of ALJ Lovitt's decision. Additionally, ALJ's Lovitt's decision evidences that he reviewed in full the record post-dating the state agency physicians opinions and added additional limitations to Edelen's RFC where appropriate. The Court finds no error in the weight ALJ Lovitt attributed to the state agency physicians' opinions.

Next, Edelen argues ALJ Lovitt erred in assigning only partial weight to the opinion of the CE Perry. (DN 15, at PageID# 2988.) CE Perry was an examining source, not a treating source, because CE Perry assessed Edelen in person on only one occasion in order to conduct a mental status examination to determine present levels of functioning. (R. at 777-83.) *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) (quoting 20 C.F.R. § 402.1502) (noting that an examining source "has examined the claimant 'but does not have, or did not have, an ongoing treatment relationship with her'"). In affording weight to an examining source, the ALJ is required to "consider factors including the length and nature of the treatment relationship, the evidence that the physician offered in support of her opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in her specialty." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). However, a medical opinion from an examining source is "never assessed for 'controlling weight.'" *Gayheart*, 710 F.3d at 376. Further, unlike when an ALJ gives less than controlling weight to the opinion of a treating physician, an ALJ is not required

to give "good reasons" for the weight ascribed to an examining physician's opinion.  *See Ealy*, 594 F.3d at 514 ("[A]n ALJ is procedurally required to 'give *good reasons* in [his] notice of determination or decision for the weight [he gave the claimant's] treating source's opinion.' However, this requirement only applies to treating sources." (emphasis added)).  Instead, the ALJ must only "say enough 'to allow the appellate court to trace the path of his reasoning.'"  *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)).

ALJ Lovitt found CE Perry's opinion regarding Edelen's physical limitations to be entitled to some weight and his opinion regarding Edelen's mental abilities to be entitled to "limited partial weight."  (R. at 20.)  ALJ Lovitt quoted a substantial portion of CE Perry's opinion within his decision. (*Id.*)  ALJ Lovitt explained his consideration of CE Perry's opinion by stating that the "physical limitations [within the opinion] are outside the of the area of expertise for the consultative psychologist, and other limitations appear too heavily based on both his and his mother's subjective complaints and his performance during that single exam as opposed to the record as a whole including the prior ALJ decision and the *Dennard/Drummond* rules."  (*Id.*) Edelen argued that it was inappropriate for ALJ Lovitt to discount CE Perry's opinion on the basis of its reliance on Edelen's subjective complaints given the difference between how mental impairments and physical impairments are documented.  (DN 15, at PageID # 2988.)  However, this was not the only reason that ALJ Lovitt assigned limited partial weight to CE Perry's opinion. He also noted that the same was inconsistent with the record as a whole, which is one of the factors ALJ Lovitt was entitled to consider under the applicable regulations.  *See Ealy*, 594 F.3d at 514; 20 C.F.R §§ 404.1527(c)(3), 416.927(c)(3) (2020).  As noted above, ALJ Lovitt found support in the record for less severe symptoms and limitations than Edelen described.  Accordingly, the Court

finds ALJ Lovitt's consideration of CE Perry's opinion was consistent with the requirements of the applicable regulations and supported by substantial evidence.

Edelen also argues that ALJ Lovitt erred in failing to give controlling weight to Dr. Plato's August 2016 assessment.  (DN 15, at PageID # 2989.)  Dr. Plato is Edelen's neurologist and considered a treating source.  Unlike examining sources, treating sources must be given controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted).  If the treating source is not given controlling weight, then the "opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence." *Id*. (citing 20 C.F.R. § 416.927(c)(2)-(6)).  Whatever weight the ALJ accords a treating source's opinion, he or she must set forth "good reasons" for doing so.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) ("The regulation requires the agency to give good reasons for not giving weight to a treating physician in the context of a disability determination." (internal citations and quotations omitted)).

ALJ Lovitt ascribed "little weight" to Dr. Plato's assessment.  (R. at 20.)  ALJ Lovitt acknowledged Dr. Plato "endorse[d] 'poor' and less than 'fair' performance in almost all mental functions."  (*Id.*)  Dr. Plato's assessment was a checkbox form in which he checked how Edelen faired in areas of mental capacity ranging from memory function to his ability to socialize.  These checkbox forms have been criticized before in the Sixth Circuit.  *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x. 563, 566 (6th Cir. 2009).  In *Ellars*, the Sixth Circuit acknowledged that "[m]any courts have cast doubt on the usefulness of these forms and agree that administrative law judges

may properly give little weight to a treating physician's 'check-off form' of functional limitations that 'did not cite clinical test results, observations, or other objective findings." *Id.* at 566 (citing *Teague v. Astrue*, 638 F.3d 611, 616 (8th Cir. 2011)).  ALJ Lovitt criticized Dr. Plato's opinion, stating, "[I]t is largely outside the area of expertise of this source, and it is not well cited or consistent with the longitudinal record as a whole." (R. at 19.)  As to the lack of support, Dr. Plato simply checked two pages of boxes and left blank a space provided to include medical/clinical findings that supported his assessment.  (*Id.* at 1029-31.)  Elsewhere in his decision, ALJ Lovitt had considered in detail multiple examinations performed by Dr. Plato when discussing Edelen's headaches as well as other evidence regarding Edelen's mental impairments and abilities.  (*Id.* at 19.)  The Court above found ALJ Lovitt's assessment of those records to be supported by substantial evidence.  Thus, ALJ Lovitt properly found Dr. Plato's check-box opinion entitled to less than controlling weight given its inconsistency with the overall record.  Edelen also disputed ALJ Lovitt's conclusion that the opined mental limitations were outside the expertise of a neurologist.  (DN 15, at PageID # 2989.)  Dr. Plato's other treatment notes were primarily focused around the headaches Edelen experienced and his Botox treatments, not his mental abilities.  Edelen provided no support for his assertion that it was proper for Dr. Plato to make conclusions regarding Edelen's mental health more typically addressed by mental health treatment providers.  Accordingly, Court holds that ALJ Lovitt supported his rejection of Dr. Plato's opinion with good reasons and that his decision was based upon substantial evidence.

### f)      Substantial Evidence Generally

To the extent anything in Edelen's brief could be construed as a general challenge to the existence of substantial evidence to support ALJ's Lovitt RFC finding, the Court finds that ALJ Lovitt's determination of Edelen's RFC is supported by substantial evidence for the reasons set

forth above.  ALJ Lovitt cited to medical evidence of record, including the headache and mental impairment records discussed at length above, the records of Edelen's treating physician, as well as Edelen's own testimony, in support of his conclusion.  Further, ALJ Lovitt relied upon the opinion evidence of record, including the opinion from the state agency physicians, ultimately incorporating more limits than originally imposed by those physicians given evidence supporting higher limitations.

### 3. Hypothetical to the VE

Finally, Edelen argues the hypothetical ALJ Lovitt posed to the VE did not adequately address his limitations.  At step five, the ALJ has the burden of demonstrating that there exists a significant number of jobs in the national economy that the claimant can perform given his or her residual functional capacity, age, education, and past work experience.  20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g); 20 C.F.R. §§ 404.1560(c), 416.960(c) (2020); *Jordan*, 548 F.3d at 423.  The Commissioner may meet this burden by relying on expert vocational testimony received during the hearing to determine what jobs exist in significant numbers in the economy that the claimant can perform, considering the combination of his or her limitations.  *See, e.g.*, *Fry v. Comm'r of Soc. Sec.*, 476 F. App'x 73, 76 (6th Cir. 2012); *Wilson*, 378 F.3d at 548.  A vocational expert's testimony *can* constitute substantial evidence to support the Commissioner's finding that a claimant is capable of performing a significant number of jobs existing in the economy, *Bradford v. Sec'y Dep't. of Health & Hum. Servs.*, 803 F.2d 871, 874 (6th Cir. 1986) (per curiam), so long as a vocational expert's testimony is based on a hypothetical question that "accurately portrays [a claimant']s individual physical and mental impairments." *Varley v. Sec'y of Health and Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)).  *See also Cline v. Comm'r of Soc. Sec.,* 96 F.3d 146,

150 (6th Cir.1996). "However, the ALJ is only required to incorporate into the hypothetical questions those limitations which have been accepted as credible." *Hare v. Comm'r of Soc. Sec.*, 37 F. App'x 773, 776 (6th Cir. 2002); *see also Stanley v. Sec'y of Health & Hum. Servs.,* 39 F.3d 115, 118-19 (6th Cir. 1994) ("[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals.")).

Edelen argued that ALJ Lovitt's hypothetical to the VE did not accurately portray his limitations. (DN 15, at PageID # 2990.) ALJ Lovitt's hypothetical question in this case paralleled the mental limitations incorporated in his RFC finding. (R. at 115-17.) Because this hypothetical accurately set forth the limitations in the RFC fashioned by ALJ Lovitt—which the Court found above is supported by substantial evidence—ALJ Lovitt did not err in relying on the vocational expert's testimony. Consequently, ALJ Lovitt's Finding No. 10 is supported by substantial evidence.

## III. CONCLUSION AND ORDER

For the reasons set forth above and the Court being otherwise sufficiently advised, IT IS HEREBY ORDERED that the final decision of the Commissioner of Social Security is **AFFIRMED**. A final judgment will be entered separately.

Colin H Lindsay, Magistrate Judge

United States District Court

cc:     Counsel of Record

March 22, 2021

23